

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00069-CV

_____

DOUGLAS A. DUNN, Appellant

V.

TDCJ-ID, ET AL., Appellees

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 03-C-1588-102

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

In 2003, Douglas A. Dunn sued several officials of the Texas Department of Criminal Justice for confiscating items found inside a storage container located in Dunn's prison cell during what Dunn described as an illegal search that had occurred earlier that year. As a result of the items found during the search, prison officials elevated Dunn's security classification, which in turn required Dunn to be housed in a different prison facility, caused him to lose the job he had at his old prison, led to Dunn being placed on cell and commissary restrictions, and caused Dunn to lose class credit and good time credit. Dunn's lawsuit was filed pro se, *in forma pauperis*.

On May 14, 2007, the trial court dismissed Dunn's civil lawsuit. Dunn now appeals, raising four issues: (1) the trial court erred by concluding Dunn failed to state a cause of action under 42 U.S.C. § 1983, (2) the trial court erred by concluding Dunn failed to state a cause of action under the Texas Tort Claims Act, (3) the trial court denied Dunn due process by dismissing his lawsuit, and (4) the trial court abused its discretion by not allowing Dunn's case to proceed to trial during the twenty-four months between the date Dunn filed his original petition and the date the trial court dismissed Dunn's lawsuit. Regardless of Dunn's characterization of his appellate issues, each of those points of error ultimately turns on whether Dunn had a reasonable expectation of privacy in the storage container that was located within his prison cell. If, to paraphrase Chief Justice Warren Burger, our American society is prepared to recognize that an inmate has a "justifiable" expectation of privacy in a storage container located inside the inmate's cell, then Texas prison guards should not

be allowed to trample that inmate's expectation of privacy as secured by the Fourth Amendment. If, on the other hand, our American society believes a prisoner has no reasonable, legitimate, or justifiable expectation of privacy in a smaller storage container within that inmate's prison cell, then a search of that storage container by Texas prison officials does not trigger the Fourth Amendment's protections against unreasonable search and seizure. *See Hudson v. Palmer*, 468 U.S. 517, 525 (1984). Under this latter scenario, Dunn's allegations—even if taken as true—would not be actionable and could not be said to subject the named defendants to liability, requiring the trial court to grant the defendants' motion to dismiss Dunn's lawsuit for failing to state a viable cause of action.

In *Hudson*, a majority of the United States Supreme Court wrote that "society is not prepared to recognize as legitimate *any* subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." 468 U.S. at 526. The Court continued by writing,

> The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> Prisons, by definition, are places of involuntary confinement of persons who have demonstrated a proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. . . .

3

The administration of a prison, we have said, is "at best an extraordinarily difficult undertaking." But it would be literally impossible to accomplish the prison objectives . . . if inmates retained a right of privacy in their cells. Virtually the only places inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.

*Id.* at 526–57 (citations omitted). Additionally, the United States Supreme Court has recognized that a "shake down" search of an inmate's cell does not violate the Fourth Amendment. *Block v. Rutherford*, 468 U.S. 576, 589–91 (1984) (prison officials, not the courts, should be empowered to make the difficult judgments that reconcile conflicting claims affecting prison security and inmate welfare, including when and how cell searches should occur). A proper search of a prison cell may include searching the inmate's legal materials. *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996).

If our American society does not believe an inmate has a justifiable expectation of privacy within a prison cell, then it follows that our society does not believe an inmate has a justifiable expectation of privacy within a storage container located somewhere within that same prison cell. To hold otherwise would defeat the rationale for prohibiting prisoners from successfully claiming a Fourth Amendment right against searches of prison cells by prison officials. Such an exception would allow every inmate to secrete drugs, weapons, and other contraband in a special "Fourth Amendment" storage container located inside the cell, thereby thwarting prison officials' efforts to prevent drugs, weapons, and other contraband from being introduced into and distributed throughout penal institutions. In essence, the exception would swallow the rule, making the latter meaningless.

4

We do *not* believe our society is prepared to recognize as "justifiable" the general Fourth Amendment interest now asserted by Dunn, nor do we find the reasonableness of the expectation of privacy by a prisoner in *any* contents of a prison cell necessarily outweighs the various needs of prison officials in carrying out their efforts to provide safe, sanitary, and drug-free prisons. Nor has Dunn directed this Court's attention to either (1) evidence in the appellate record about an official policy of the Texas Department of Criminal Justice[1] that affords inmates additional search and seizure protections beyond the Fourth Amendment or (2) a law or policy of this State that affords a prisoner greater protection from search and seizures of an inmate's belongings by prison guards than might otherwise be provided by the Fourth Amendment. Therefore, because an inmate has no justifiable expectation of privacy in a storage container located within a prison cell, it follows that Dunn cannot successfully argue prison officials violated his Fourth Amendment privacy interests by searching his prison cell. *Cf. Busby v. Dretke*, 359 F.3d 708, 715–16 (5th Cir. 2004) (citing *Stroud v. United States*, 251 U.S. 15 (1919), for proposition that jailers may read inmates' private mail

[1]Dunn attached to his appellate brief a document titled "Offender Instructions for Subsequent Storage Review." Dunn contends these documents outline a policy issued by the warden of his former prison, a policy that affords him greater protection against an illegal search and seizure than might otherwise be provided by the Fourth Amendment. These "Offender Instructions" were not made part of the record of the proceedings below and may not be considered by this Court on appeal. *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex. App.—El Paso 2007, pet. dism'd w.o.j.) (citing *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no writ)). Additionally, even if we were to assume such documents to be authentic, they do not purport to outline any official policy adopted by the Texas Department of Criminal Justice that would entitle inmates to a greater degree of protection from search and seizure by prison officials than that already afforded by the Fourth Amendment.

5

without violating Fourth Amendment); *Monroe v. Beard*, No. 05-04937, 2007 U.S. Dist. LEXIS 16943, at \*30 (E.D. Pa. Mar. 8, 2007) (inmates cannot claim any violation of Fourth Amendment rights because inmates lost their legitimate expectation of privacy in prison cells on conviction); *Soria v. State*, 933 S.W.2d 46, 59–60 (Tex. Crim. App. 1996) ("It was not unreasonable for jail officials to conclude [inmate's] drawing at issue disserved legitimate institutional interests."). Thus, Dunn cannot successfully maintain a cause of action against prison officials for conduct that turns on his claim of a reasonable expectation of privacy in the contents of his prison cell, or any storage container located therein.

In summary, Dunn's civil petition did not advance a valid cause of action against the defendants. The trial court's order of dismissal reflects the lower court properly recognized

this principle in law and fact.  Accordingly, we overrule Dunn's appellate issues and affirm the trial court's judgment.[2]

Jack Carter
Justice

Date Submitted:    December 5, 2007
Date Decided:      January 11, 2008

---

[2]Our opinion today should not be read to espouse the view that inmates have no constitutional interest in their legal correspondence materials.  Such an assertion is affirmatively refuted by our Fourteenth Amendment's jurisprudence as it relates to an inmate's constitutional right to access the courts, as guaranteed by the First and Fifth Amendments, and made applicable to the states by the Fourteenth Amendment.  *See Bieregu v. Reno*, 59 F.3d 1445, 1453–454 (3d Cir. 1995).  If state prison officials maintain a constant practice of searching and destroying an inmate's legal materials, such conduct might be actionable as a denial of the prisoner's right to reasonable access to the courts.  *Gill v. Neaves*, No. SA-82-CA-583, 1986 U.S. Dist. LEXIS 21879, at *13–14 (W.D. Tex. Aug. 5, 1986).  However, a single search of an inmate's legal materials and the destruction of some of those materials would generally *not* violate a prisoner's right to court access.  *Id.*  Regardless, Dunn does not assert that the single search of his storage compartment, which he alleges contained legal material, constituted part of a larger pattern of conduct or that he has somehow been denied reasonable access to the courts.

7